NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| WILLIAM GERACZYNSKI and CHRISTINE GERACZYNSKI, | : : : | **Civil Action No. 11-6385 (SRC)** |
| Plaintiffs, | : : : | |
| v. | : : : | **OPINION** |
| NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK, et al., | : : : | |
| Defendants. | : : | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion for summary judgment filed by

Defendants SAFCO Products Company ("SAFCO"), Liberty Diversified International ("Liberty

Diversified"), Staples, Inc. ("Staples") and Corporate Express ("CE") (collectively, the "Moving

Defendants"). Opposition to the motion has been filed by Plaintiffs William and Christine

Geraczynski and by Defendant Oasyschair Co., Ltd. ("Oasyschair"). The Court has considered

the papers filed by the parties and proceeded to issue its ruling based on the written submissions

and without oral argument, as authorized by Federal Rule of Civil Procedure 78. For the reasons

expressed below, the motion for summary judgment will be granted in part and denied in part.

I.      **BACKGROUND**

On April 20, 2011, while attending a job briefing and safety meeting in the course of his

employment with Defendant Amtrak, Plaintiff William Geraczynski ("Geraczynski") suffered

1

injuries when the chair in which he was seated collapsed, causing Geraczynski to fall to the floor. The chair was located in the office room trailer at Amtrak's Sunnyside Yard facility in Queens, New York. Geraczynski, a resident of New Jersey, initially filed suit in this Court against Amtrak only, asserting a claim pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51, but later amended his Complaint to name additional defendants and assert product defect claims under the New Jersey Product Liability Act, N.J.S.A. § 2A:58C-1, et seq., and the common law theories of breach of express warranty and negligence.

The subject chair was a "Nesting Chair" model number 3480 BL manufactured by Defendant Oasyschair. While the parties dispute which entity controlled the design of the chair, the record contains evidence that it was designed by Oasyschair in collaboration with Defendant SAFCO, or at the very least according to input and specifications provided by SAFCO. SAFCO, a wholly owned subsidiary of Defendant Liberty Diversified, was the chair's distributor. SAFCO purchased the Nesting Chair from Oasyschair and sold it to Defendant Staples and/or Corporate Express (a wholly owned subsidiary of Staples), which in turn sold it to Amtrak.

According to Plaintiff's expert, George P. Widas, a professional engineer, the subject chair failed due to a manufacturing defect. Specifically, he stated that the steel reinforcing pin in the lower seat back was not inserted to the proper depth, preventing the chair from tolerating the weight load for which it was designed. In his opinion, had the chair been manufactured properly, with the reinforcing pin inserted according to the design, it would have sustained the force and weight of someone sitting in the chair and leaning back on it. He testified at his deposition:

Q.      What about this chair did you find defective or improper?

A.      It wasn't manufactured according to the design, which generated excessive stresses under foreseeable loading less than its design tolerance and it failed readily as a loading considerably less than its design tolerance.

Q.      Can you tell a lay jury, pretend a lay jury is here in front of you. Can you tell them what you are talking about?

A.      The chair was designed to be strong enough for somebody to sit in it and exert force to the back of the chair. This chair wasn't built according to that design. It was built very weak and when somebody leaned against the back of it the right way it broke. It was at a very weak level.

Q.      Is that the nature of your opinion with respect to the chair?

A.      Yes.

* * *

Q.      Your allegation is that this chair was assembled incorrectly?

A.      Yes. Manufactured, when I said assembled I mean the reinforcing pin was not inserted to a proper depth according to the original design.

Q.      So, your belief, if I could put this in layman's terminology, had the pin been inserted deep enough, according to the original design, that would have rendered the chair not defective and okay as far as you are concerned.

Q.      Yes.

(Widas Tr. at 117:7-25; 120:9-20.)

The Plaintiff's expert has been clear that it is not his opinion that the subject chair failed due to a design flaw. In fact, he testified at his deposition that "it is designed properly." (Id. at 117:5-6.) He confirmed that the only defect he found was the insertion of the reinforcing pin to an improper depth during the manufacture of the chair. He testified as follows:

3

Q.      So, your beef, the bottom line beef, is that the pin was not inserted deep enough.  Correct?

A.      Yes.

Q.      Is that the bottom line?

A.      Yes.

Q.      How much deeper should it have been inserted to render the unit non-defective?

A.      Point six zero inches.

Q.      Had it been inserted .60 inches to the plane, it could have rendered it non-defective as far as you are concerned?

A.      Yes.

Q.      Is that the only defect you found?

A.      Yes.

(Id. at 122:20 - 123:8.)


II.      DISCUSSION

   A.  Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) when the

moving party demonstrates that there is no genuine issue of material fact and the evidence

establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could

return a verdict for the non-movant, and it is material if, under the substantive law, it would

affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In

considering a motion for summary judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## B. Analysis

Plaintiffs seek to hold the Moving Defendants liable for personal injuries caused by the alleged chair defect under the New Jersey Product Liability Act. The Product Liability Act is the "exclusive remedy" for personal injury caused by product defect. Koruba v. Am. Honda Motor Co., 396 N.J. Super. 517, 531 (App. Div. 2007). Its enactment has eliminated the availability of claims for negligence or breach of implied warranty related to product defect, with a carved out exception for claims based on the breach of an express warranty.[1] Id.; Tirrell v. Navistar Int'l, 248 N.J. Super. 390, 398 (App. Div. 1991). The method of proof for a claim asserted under the Product Liability Act is essentially the same as "that recognized for strict liability claims." Tirrell, 248 N.J. Super. at 398. In relevant part, the statute provides as follows:

---

[1] The Court notes that the Third Amended Complaint asserts negligence claims against each of the Moving Defendants, which have argued in their moving brief that the Product Liability Act is Plaintiffs' subsumes common law actions for negligence. Non-movants Oasyschair and the Plaintiffs do not dispute this point. Accordingly, the Court understands the motion to include a request for summary judgment on the negligence claim. This portion of the motion will be granted, as a negligence claim in a product liability action is clearly not viable. Koruba, 396 N.J. Super. at 531; Tirrell, 248 N.J. at 398.

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: [a] deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or [b] failed to contain adequate warnings or instructions, or [c] was designed in a defective manner.

N.J.S.A. § 2A:58C-2.

As the quoted provision reflects, both product manufacturers and product sellers are exposed to liability under the Product Liability Act. The statute, however, provides a mechanism for an "innocent" seller to be relieved of liability if it can demonstrate that it had "no significant responsibility for the alleged product defect and the manufacturer is amenable to service of process and is likely to be able to satisfy any judgment." Claypotch v. Heller, Inc., 360 N.J. Super. 472, 485 (App. Div. 2003). Stated differently, the New Jersey Appellate Division held that a product seller may avail itself of the immunity provided by N.J.S.A. § 2A:58C-9 if it is "truly innocent of responsibility for the alleged defective product" and if the injured party retains a viable claim against the manufacturer. Id.; see also Bashir v. Home Depot, No. 08-4745, 2011 WL 3625707, at *3 (D.N.J. Aug. 16, 2011) (holding same, in reliance on Claypotch). The relevant provision, invoked by the Moving Defendants as a basis for this summary judgment motion, requires the product seller to "file an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death or damage." N.J.S.A. § 2A:58C-9(a). This identification of the product manufacturer will relieve the seller of liability, subject to various conditions set forth in subsection d of the provision. N.J.S.A. § 2A:58C-9(b). Subsection d provides:

A product seller shall be liable if:

(1) The product seller has exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage; or

(2) The product seller knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage; or

(3) The product seller created the defect in the product which caused the injury, death or damage.

N.J.S.A. § 2A:58C-9(d). The burden is on the product seller to prove that the statutory exceptions to immunity do not apply. Fidelity and Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc., --- F. Supp. 2d ---, 2013 WL 1299184, at *10 (D.N.J. Mar. 26, 2013); see also Bashir, 2011 WL 3625707, at *3 (holding that a product seller must present evidence that the factors in subsection (d) do not apply or point to a "lack of evidence in the record supporting opposite conclusions.").

Defendant SAFCO has demonstrated that it is entitled to summary judgment on Plaintiffs' product liability claim. It complies with the statute by submitting the Affidavit of Pam La Fontaine, SAFCO's Director of Global Sourcing. As required by § N.J.S.A. 2A:58C-9, the affidavit identifies Oasyschair as the product manufacturer. Clearly, Plaintiffs can pursue a viable claim against Oasyschair, as it is in fact a named party actively defending against Plaintiffs' claims in this lawsuit. Moreover, SAFCO has established that it is not the manufacturer of the subject chair, played no role in the manufacture of the chair or in the creation of the alleged defect which caused the chair to collapse, and had no reason or basis to

8

know that the reinforcing pin in the chair's lower back was inserted to an insufficient depth in

the manufacturing process. In the affidavit, La Fontaine states that "that area of the chair (the

pins in the seats) is completely enclosed and not subject to visual inspection at any time after

manufacture." (La Fontaine Aff. at ¶ 21.) She further asserts that "SAFCO had no control of

any nature whatsoever regarding the manufacture of the chair, and did not manufacture the chair,

nor did they place the metal pins into the plastic seats where the chair allegedly failed." (Id. at ¶

22.)

Neither Plaintiffs nor Oasyschair have come forward with any evidence to dispute these

facts. Instead, they attempt to create an issue of fact by pointing to evidence, consisting mostly

of emails exchanged between SAFCO and Oasyschair, they contend demonstrate that SAFCO

was "deeply involved" with the design, labeling and packaging of the chair. Such evidence, even

when viewed in the light most favorable to non-movants Oasyschair and Plaintiffs, fails to create

a genuine issue of material fact because, quite simply, the design of the chair is completely

immaterial to Plaintiffs' product liability claim. Plaintiffs' expert states unequivocally, in both

his deposition testimony as well as the two reports he prepared, that the only defect in the subject

chair is a manufacturing defect. Neither the chair's design, nor for that matter its labeling and

packaging, are at issue in this case. Even if it were assumed, for the sake of argument, that

Defendant SAFCO had exercised significant control over the design of this product, or at the

very least that the evidence proffered by the non-movants pointed to a genuine dispute as to

SAFCO's participation in the design, such facts are completely irrelevant.[2] They do not refute

---

[2] For this reason, the Court finds unavailing non-movants' argument that summary judgment must be denied because they need to conduct further discovery, including the deposition of La Fontaine. They have not demonstrated, pursuant to Rule 56(d), that discovery of additional facts regarding SAFCO's involvement with the design or other aspects of bringing the chair to market could negate SAFCO's entitlement to product seller immunity. In other words, Plaintiffs and Oasyschair have not shown that additional facts could give rise to a genuine issue as to SAFCO's involvement in or knowledge of the manufacture of the subject chair.

SAFCO's satisfactory demonstration that it is "truly innocent of responsibility" for the improper insertion of the reinforcing pin. Indeed, to the contrary, the product was correctly designed, according to Plaintiffs' expert, who opined that had the chair been manufactured in compliance with the design specification regarding the proper depth for the reinforcing pin, it would not have failed. SAFCO, in short has carried its burden of establishing the affirmative defense provided by the Product Liability Act for "innocent sellers."

The other Moving Defendants, however, have not made a sufficient demonstration on this motion to avail themselves of innocent seller immunity. While the Court's review of the record strongly suggests that, like SAFCO, Defendants Liberty Diversified, Staples and CE would be entitled to summary judgment for having no involvement in creating the defect at issue, these Defendants have not complied with N.J.S.A. § 2A:58C-9. The statutory immunity provision *requires* a product seller to (1) file an affidavit identifying the product manufacturer; (2) establish that the manufacturer "is amenable to service of process and is likely to be able to satisfy any judgment;" and (3) establish that it had no "significant responsibility" for the alleged defect. Claypotch, 360 N.J. Super. at 485 (interpreting and applying N.J.S.A. § 2A:58C-9). The only Moving Defendant to file an affidavit and otherwise comply with the statute's innocent seller provision is SAFCO. The Court will accordingly deny the motion for summary judgment on the Product Liability Act claim as to Liberty Diversified, Staples and CE but will do so without prejudice to a renewed motion by these Defendants.

Additionally, insofar as the motion for summary judgment pertains to the claim for breach of an express warranty, it must be denied without prejudice as to all Moving Defendants. While they may be correct that Plaintiffs have no viable claim for breach of express warranty

because Plaintiffs did not purchase the subject chair, Moving Defendants raise this argument for the first time in their reply brief. Their moving brief gives no indication that they seek summary judgment on the breach of express warranty claim nor the basis on which they contend that summary judgment is warranted, thus giving the other parties no meaningful opportunity to present a responsive argument. The Court will therefore not consider the Moving Defendants' arguments as to the breach of express warranty claim, without precluding them from properly moving for summary judgment on this claim going forward. Anspach v. City of Philadelphia, 503 F.3d 256, 259 n. 1 (3d Cir.2007); Bayer AG v. Schein Pharma. Inc., 129 F.Supp.2d 705, 716 (D.N.J. 2001), aff'd 301 F.3d 1306 (2002).

## III.    CONCLUSION

For the reasons discussed, this motion will be granted in favor of Defendant SAFCO only insofar as it seeks summary judgment on Plaintiffs' claim under the Product Liability Act. Summary judgment will be granted in favor of all Moving Defendants on the negligence claim. The remainder of the Rule 56(a) motion filed by Defendants SAFCO, Liberty Diversified, Staples and CE will be denied without prejudice. An appropriate order will be filed.

    s/ Stanley R. Chesler    
STANLEY R. CHESLER
United States District Judge

Dated: November 1, 2013