NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM GERACZYNSKI and CHRISTINE GERACZYNSKI, : : : Plaintiffs, : : v. : : NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK, et al., : : Defendants. | Civil Action No. 11-6385 (SRC) OPINION |

**CHESLER**, District Judge

This matter comes before the Court upon various motions for summary judgment filed by Defendants and one motion to dismiss brought by the Third-Party Defendant. The motions, which concern Defendants' cross-claims for indemnification and a third-party claim for insurance coverage, have all been opposed and fully briefed. The Court has considered the papers filed by the parties in connection with these motions and proceeds to issue its ruling based on the written submissions and without oral argument, as authorized by Federal Rule of Civil Procedure 78.

I.  **BACKGROUND**

The core of this product liability action concerned allegations of a defectively manufactured chair, which failed and collapsed, resulting in injuries to Plaintiff William

1

Geraczynski in the course of his employment with Defendant Amtrak. In addition to bringing a negligence claim against Amtrak pursuant to the Federal Employers' Liability Act, Geraczynski a New Jersey resident, also sought to hold various companies liable under the New Jersey Product Liability Act, based on their commercial involvement with the allegedly defective chair. Those Defendants are as follows: SAFCO Products Company ("SAFCO") and its parent company Liberty Diversified International (collectively "SAFCO"); and Staples, Inc. and its predecessor company Corporate Express (collectively "Staples"). The background facts out of which this litigation arose have been set forth in this Court's November 1, 2013 Opinion, issued in connection with motions for summary judgment with respect to Plaintiff's product liability claims.

      Plaintiff settled his claims against all Defendants, with the product manufacturer, Oasyschair, bearing full responsibility for the settlement. Left unresolved were Defendants' cross-claims against each other for indemnification. Various motions were filed, which the Court held in abeyance at the request of the parties, while they endeavored to mediate their dispute. These efforts were only partially successfully. Amtrak's motion, concerning its cross-claim against Staples for contractual indemnification, is now moot, as its settlement with Staples has extinguished that claim. The Court now proceeds to rule on the remaining motions. They are: (1) Staples' motion for summary judgment on its cross-claims against SAFCO; (2) SAFCO's motion for summary judgment on its cross-claims against Oasyschair; (3) Third-Party Defendant Columbia Casualty Co.'s ("Columbia") motion to dismiss SAFCO's third-party claim

for a declaration of insurance coverage; and (4) SAFCO's motion for summary judgment on its declaratory judgment claim for coverage.[1]

II. **DISCUSSION**

**A. Staples' Indemnification Cross-Claim Against SAFCO**

Staples seeks contractual indemnification from SAFCO for the losses incurred in defending against Plaintiffs' claims as well as losses associated with Amtrak's cross-claim for contractual indemnification. Staples, seller of the allegedly defective chair to ultimate consumer Amtrak, obtained the product from distributor SAFCO. At the time of the wholesale purchase transaction involving the subject chair, Staples and SAFCO were parties to a Vendor Agreement, which applied to all furniture products purchased by Staples from SAFCO from January 1, 2005 to December 31, 2011. The Vendor Agreement contains an indemnification provision, which provides as follows:

> Vendor [SAFCO] agrees, at Vendor's expense, to promptly indemnify and hold Staples harmless against any and all third party claims, actions, proceedings or investigations (each a "Claim") arising from an actual or alleged breach of any representations, warranties or covenants made by Vendor under this Vendor Agreement.

(Spencer Aff., Ex. A: Vendor Agreement, ¶ 19.) Under the Vendor Agreement, SAFCO "represents and warrants to Staples that: (a) all Product is free from defects . . . ." (Id., ¶ 15.)

---

[1] Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Amtrak's cross-claims against Staples fall squarely within the Vendor Agreement's obligation on SAFCO to indemnify Staples.  There is no dispute that Amtrak is a third party with respect to the Vendor Agreement.  Amtrak's cross-claims against Staples asserted that, under its own contract with Staples, Staples was obligated to indemnify it for medical expenses associated with the injuries Plaintiff sustained in the collapse of the allegedly defective chair and for the legal expenses incurred in defending Plaintiff's negligence claims related to the chair failure. Amtrak's cross-claims against Staples were based on Staples's contractual obligation (1) to provide it with products that were "free from defects in design, material and workmanship" and (2) to hold Amtrak harmless from any claims, losses or expenses incurred as a result of Staples' breach of that warranty and/or as result of injuries directly or indirectly caused by products supplied by Staples.  In the Vendor Agreement governing the relationship between SAFCO and Staples, SAFCO expressly warranted to Staples that the product was "free from defects" and undertook the obligation to indemnify Staples against claims arising from breach of that representation.  Indeed, the warranty made by Staples in the contract covering the sale of the chair to Amtrak essentially mirrors the warranty made by SAFCO in the Vendor Agreement covering SAFCO's sale of the chair to Staples.

SAFCO does not controvert or dispute these material facts concerning the nature of the claims against Staples or the scope of the indemnification provision in the Vendor Agreement. Instead, it attempts to re-cast the dispute as a choice of law issue and in that way avoid enforcement of the Vendor Agreement's indemnification obligation.  SAFCO argues that the contractual indemnification claim made by Staples conflicts with the statutory scheme of the New Jersey Product Liability Act, which imposes liability on the product manufacturer, in this

4

case, named party Oasyschair.  SAFCO stresses that, as the product distributor, it is an innocent party under the Product Liability Act and should not bear the costs and fees sought by another participant in the product distribution chain, particularly where the indemnity claim, SAFCO argues, has arisen from indemnitee Staples' independent fault under its own agreement with Amtrak.  Staples's indemnity claim, however, arises from the alleged breach of an express warranty by SAFCO in the Vendor Agreement, and SAFCO cites no authority to support its argument that the New Jersey Product Liability Act precludes agreements between parties in the chain of distribution to allocate responsibility for losses stemming from product defect.  Cf. Promaulayko v. Johns Manville Sales Corp., 116 N.J. 505, 515 (1989) (holding that while, as a general rule, a party higher up the chain of product distribution should indemnify a party lower in the chain, "parties in a distributive chain may contract for a different allocation of the risk of loss.").  SAFCO also invokes the principle that "an indemnitee who has defended against allegations of its independent fault may not recover its defense costs."  Mantilla v. NC Mall Assoc., 167 N.J. 262, 272 (2001).  The argument fails, however, because that rule is inapposite to the facts of this case.  As the Court has noted, the warranties made by Staples to Amtrak concerning the subject product are essentially the same as those it received from SAFCO about the product SAFCO provided.

There is no genuine issue of material fact concerning SAFCO's obligation to indemnify Staples for losses incurred in connection with Amtrak's cross-claims, and thus summary judgment is warranted as to this portion of the indemnification claim against SAFCO.

Insofar as Staples seeks indemnification against Plaintiffs' claims, summary judgment is also warranted.  Plaintiffs' claims sought relief for injuries allegedly caused by the defectively

manufactured chair provided by distributor SAFCO to Staples. They therefore implicate SAFCO's warranty in the Vendor's Agreement that the product was not defective. Indemnity is required not only as a matter of contract but also as a matter of common law, which requires a product distributor to indemnify other distributors and sellers further down the chain of distribution, with the ultimate responsibility for losses caused by product defect resting at the top of the chain with the manufacturer. This latter point regarding common law indemnity will be discussed in the section below.

### B. SAFCO's Indemnification Cross-Claim Against Oasyschair

In is uncontroverted that SAFCO has not adduced evidence of a written contract requiring Oasyschair to indemnify it for losses arising from claims of a defective product. New Jersey courts, however, recognize the common-law right of a downstream distributor or seller to indemnification from an upstream participant in the chain of product distribution. Promaulayko v. Johns Manville Sales Corp., 116 N.J. 505, 513-15 (1989). In this lawsuit, Plaintiff's sole theory of product defect maintained that the subject chair had been defectively manufactured. (See November 1, 2013 Op. at 2-3, 9.) SAFCO is a downstream distributor in relation to product manufacturer Oasyschair and as such is entitled to indemnification from Oasyschair on all claims against SAFCO in this lawsuit.

Oasyschair argues that the general rule of indemnity as set forth by the New Jersey Supreme Court in Promaulayko does not apply in this situation because Plaintiffs, in their Complaint, had also claimed that SAFCO breached an express warranty. This claim, Oasyschair contends, transforms SAFCO's responsibility from one of passive wrongdoing to one of independent, active fault, thus invalidating SAFCO's claim of entitlement to indemnity. This

6

argument is unavailing.  Oasyschair has come forward with no evidence that SAFCO was at fault on any basis other than its role as a conduit in the distribution of the chair indisputably manufactured by Oasyschair.  Indeed, the Court had noted in its Opinion granting summary judgment in favor of SAFCO on Plaintiffs' Product Liability Act claims that it refrained from granting summary judgment on the breach of express warranty claim because the request was raised in a reply brief, not because of proof indicating that Plaintiff's claim against SAFCO might be meritorious.

Here, on the cross-motions brought by SAFCO and Oasyschair regarding the latter's duty of indemnification, the record is clear that the claims and cross-claims against SAFCO stem from its distribution of a product placed in the stream of commerce by Oasyschair with an alleged manufacturing defect.  Accordingly, SAFCO's motion for summary judgment on its cross-claim for indemnification from Oasyschair will be granted, and Oasyschair's cross-motion on the claim will be denied.

### C. Insurance Coverage Dispute Between SAFCO and Columbia

Defendant SAFCO filed a Third-Party Complaint against Columbia, asserting a single claim for insurance coverage.  SAFCO claims it is entitled to coverage as an additional insured under a commercial general liability policy issued by Columbia to Oasyschair.  Columbia has moved to dismiss that claim pursuant to Rule 12(b)(6), arguing that no relief can be granted because the Third-Party Complaint has failed to set forth that SAFCO meets a condition precedent to coverage under the policy's additional insured endorsement.  SAFCO opposes the motion, and has filed its own motion seeking summary judgment on the claim, asserting that there are no genuine issues of fact that it is entitled to coverage.

The policy at issue contains an endorsement which modifies the policy in that it provides coverage to vendors for losses relating to "all products insured under this policy." (Lem Cert., Ex. D.) The endorsement does not name any particular vendor but rather identifies an additional insured according to the following terms: "as required by written contract or agreement executed prior to the occurrence." (Id.) Columbia has argued that SAFCO cannot meet the requirements for coverage because it has failed to produce a contract between SAFCO and Oasyschair which required Oasyschair to provide insurance coverage and/or name it as an additional insured in any applicable commercial general liability policy.

Columbia's motion to dismiss the claim must be denied. A claim survives a Rule 12(b)(6) motion if the complaint contains "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) The declaratory judgment claim asserted by SAFCO, asserting its entitlement to insurance coverage, alleges a loss falling within the Oasyschair policy and further alleges that SAFCO and its parent company Liberty are additional insureds under the policy per the vendor's endorsement. It also avers that "prior to the date of the incident that is the subject matter of this litigation, SAFCO/LIBERTY entered into an agreement with Oasyschair as a downstream distributor of the chair manufactured by Oasyschair." (Am. Third Party Compl., ¶ 8.) The Third Party Complaint contains a factual allegation, which, taken as true, establishes that SAFCO and Liberty meet the endorsement's terms for coverage as additional insureds. These allegations

suffice to state a plausible claim for relief, that is, a declaration that SAFCO is entitled to coverage. Columbia's argument regarding the absence of a contract or agreement in the record goes to SAFCO's ability, or lack thereof, to prove the allegation. Challenges to a claim for lack of evidentiary support fall within the purview of summary judgment under Federal Rule of Civil Procedure 56(a). The Court will accordingly proceed to consider SAFCO's motion for summary judgment on the claim.

SAFCO concedes that it has not produced a written contract in which Oasyschair was required to secure insurance coverage for SAFCO for losses and claims related to product defects. It nevertheless argues that it meets the conditions of the vendor's endorsement based on the existence of an agreement, evidenced by the course of dealing between SAFCO and Oasyschair, to name SAFCO as additional insured. Before reaching the question of whether SAFCO has proffered sufficient evidence to demonstrate that a reasonable juror would conclude that there is such an agreement, the Court must address the issue of whether, under the terms of the endorsement, an unwritten agreement can satisfy the requirement for additional insured status. This task is one of contract interpretation.

Columbia submits that the Court should apply the law of the state of New Jersey with regard to matters of insurance contracts, taking the position that New Jersey has the most significant relationship to this case. SAFCO does not disagree, and in fact supports its arguments for summary judgment on the insurance coverage claim with New Jersey caselaw. As the parties agree on the application of New Jersey state law to their insurance coverage dispute, and the substantive law of this state would apply according to the Erie doctrine, the Court will examine the claim accordingly.

Facts regarding the applicable insurance policy and the endorsement at issue are not in dispute, and as such the interpretation of vendor's endorsement is a question for the court to decide as a matter of law. Am Cas. Co. of Reading, Pa. v. Continisio, 819 F. Supp. 385, 396 (D.N.J. 1993) (citing Weedo v. Stone-E-Brick, Inc., 155 N.J. Super. 474, 479 (App. Div. 1977), rev'd on other grounds, 81 N.J. 233 (1979)). In construing an insurance contract, a court must "search broadly for the probable common intent of the parties to find a reasonable meaning in keeping with the express general purposes thereof." Bello v. Hurley Limousines, Inc., 249 N.J. Super. 31, 40 (App. Div.1991). "If the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008). A court may look to extrinsic evidence to resolve the ambiguity. Id. It must construe the ambiguous terms so as to apply the interpretation which sustains coverage. Mazzilli v. Accident & Casualty Ins. Co., 35 N.J. 1, 7 (1961); see also Sparks v. St. Paul Ins. Co., 100 N.J. 325, 336 (1985) (holding that ambiguities in an insurance contract should be resolved against the insurance company). However, where the contract language is unambiguous, a court should enforce an insurance contract in accordance with its plain language. Chubb, 195 N.J. at 238. "Indeed, in the absence of an ambiguity, a court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." Id. (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 272–73 (2001)).

The vendor's endorsement at issue here states that, for the endorsement to apply, there must be a "written contract or agreement executed" which requires policyholder Oasyschair to name the vendor in question as an additional insured. SAFCO contends that the endorsement

10

accepts either a "written contract" or "agreement" as sufficient to trigger coverage, and thus the Court should consider the parties' course of dealing to determine whether such an agreement was in place. At the very least, according to SAFCO, the endorsement contains an ambiguity as to whether an agreement must be in writing, and the court should resolve that ambiguity in favor of the insured.

SAFCO's argument implies that the word "written" qualifies only the word "contract" but not "agreement," as a different interpretation would render use of the generally interchangeable terms redundant. Citing the Uniform Commercial Code's definition of the word "agreement," SAFCO notes that the terms can be distinct. The UCC, it points out, defines the term as follows: "'Agreement,' as distinguished from contract, means the bargain of the parties in fact, as found in their language or inferred from other circumstances, including course of performance, course of dealing, or usage of trade." N.J.S.A. 12A:1-201(3).

The flaw in SAFCO's argument, however, is that the vendor's endorsement also uses the term "executed" to describe the kind of "written contract or agreement" required to secure additional insured status under the Oasyschair policy with Columbia. The pertinent definitions of "execute" in Black's Law Dictionary state that the term means "to perform or complete (a contract or duty)" or "to make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form." Black's Law Dictionary (10th ed. 2014). The former meaning would have at best a strained application to the endorsement language, as an agreement between policyholder Oasyschair and any vendor to be named as an additional insured would require no performance, beyond the mere meeting of the minds between the parties that the vendor would, in fact, be covered under the Oasyschair insurance policy. The latter meaning of

11

"execute," signifying the act of formalizing the agreement by signing, is the only one that makes sense in the context of the insurance contract and vendor's endorsement.  Thus, contrary to SAFCO's argument, the endorsement language is not susceptible to alternative reasonable meanings, and thus does not call for the Court to consider extraneous evidence to aid in deciphering it.  It clearly provides that coverage will be provided to an additional insured where there has been a written or signed manifestation of a commitment by Oasyschair to include the vendor in the policy.

SAFCO bears the burden of proof on its claim against Columbia for insurance coverage, but it has not come forward with a written contract or signed agreement to establish that it is an additional insured.  On this record, the Court cannot conclude that no reasonable trier of fact could find in Columbia's favor.  In other words, SAFCO has failed to demonstrate that it is entitled to a declaration of insurance coverage as a matter of law.

The Court further concludes that even if it were to find the language of the vendor's endorsement ambiguous, and construe it in SAFCO's favor to mean that an unwritten agreement for additional insured coverage would suffice, SAFCO would not have established that summary judgment on the insurance coverage claim is warranted.  SAFCO argues that the course of dealing between Oasyschair and SAFCO establishes that an agreement exists but fails to provide evidence to establish such an implied contract-in-fact.  The risk manager for Liberty Diversified, SAFCO's parent company, states in his certification that "on many prior occasions (10 to 15), Oasyschair and/or its carrier, would always step forward and defend and indemnify SAFCO [on product claims.]"  (Towne Cert. ¶ 11.)  This assertion that "Oasychair and/or its carrier" has indemnified SAFCO in the past does not necessarily indicate that Oasyschair has routinely

12

named SAFCO as an additional insured or that Columbia has routinely provided coverage to SAFCO on product claims pursuant to the vendor's endorsement. SAFCO also relies on the Certificate of Liability Insurance issued by Oasyschair's insurance broker, which pertains to the Columbia commercial general liability policy held by Oasyschair. The certificate states that "SAFCO Products Company is named as an additional insured per broad form vendors endorsement where required by writ [sic] contract or agreement." (SAFCO Mot., Ex. B.) This may constitute relevant evidence on the insurance coverage claim but does not establish SAFCO's entitlement to judgment on the claim as a matter of law. The representation made in the certificate by and large parrots the language of the vendor's endorsement, and as discussed, SAFCO has failed to establish an agreement requiring that SAFCO be named as an additional insured. Moreover, the certificate does not amend or enlarge the coverage provided by the Oasyschair commercial general liability policy issued by Columbia. In fact, it expressly cautions as follows:

> This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not affirmatively amend, extend or alter the coverage afforded by the policies below. This certificate of insurance does not constitute a contract between the issuing insurer(s), authorized representative or producer and the certificate holder.

(SAFCO Mot., Ex. B.)

While SAFCO has failed to satisfy the burden for summary judgment on its claim against Columbia, its motion has placed before the Court those parts of the record pertinent to the claim. Upon searching the record, the Court concludes that no reasonable juror could find in SAFCO's favor on the insurance coverage claim, making summary judgment appropriate in favor of Columbia pursuant to Rule 56(f)(1). While notice of a court's intent to grant summary

judgment pursuant to this rule is typically required, an exception to this rule applies when there is a fully developed record, a lack of prejudice to the parties, and a decision on a purely legal issue. Gibson v. Mayor & Council of City of Wilmington, 355 F.3d 215, 223-24 (3d Cir. 2004). Moreover, the Third Circuit has held a party may be deemed to be on notice of a sua sponte summary judgment ruling when "the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." Id. (affirming district court's grant of summary judgment *against* a party that brought a motion for summary judgment, without first giving notice to that party); see also Zimmerlink v. Zapotsky, 539 F. App'x 45, 49 (3d Cir. 2013) (holding same and quoting Gibson).  Here, SAFCO has put the merits of the insurance coverage claim squarely before the Court on its motion for summary judgment on a claim on which it bears the burden of proof, and in so doing, has had the opportunity to present all evidence and arguments supporting its claim, that is, "to put its best foot forward." It has had, consistent with the Third Circuit's guidance in Gibson and Zimmerlink, sufficient notice for this Court to exercise its authority under Rule 56(f)(1).[2]

Accordingly, SAFCO's motion for summary judgment on the third-party claim against Columbia must be denied, and the Court will grant Columbia summary judgment SAFCO's insurance coverage claim pursuant to Rule 56(f)(1).

---

[2] The Court notes that, in addition, the circumstances presented justify an exception to the notice requirement. For the reasons discussed, there is no surprise or unfairness to SAFCO.  Clearly, with discovery long completed, the record is fully developed, and the threshold issue on the insurance coverage claim concerns interpretation of the vendor's endorsement, a purely legal question of contract construction.

### III.   CONCLUSION

For the reasons discussed, the pending motions will be adjudicated as follows: Staples' and SAFCO/Liberty's motions for summary judgment on the indemnification cross-claims will be granted, and Oasyschair's cross-motion will be denied.  Columbia's motion to dismiss the Third-Party Complaint filed by SAFCO will be denied.  SAFCO's motion for summary judgment on its Third-Party Complaint against Columbia will be denied, and summary judgment in favor of Columbia on the insurance coverage claim brought by SAFCO will be granted.  Amtrak's motion for summary judgment on its cross-claim against Staples will be dismissed as moot.  An appropriate order will be filed.

    s/ Stanley R. Chesler    
STANLEY R. CHESLER  
United States District Judge

Dated: July 31, 2015